UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA

— against —

MICHAEL ANGELO SOUZA, a/k/a "Mickey";          **MEMORANDUM and ORDER**
MICHAEL BOLINO, a/k/a "Ba Ba," "Bo Bo,"
    and "Curly";                                                        06-CR-806 (SLT)
SHELTON WILLIS, a/k/a "Shel";
EMANUEL RUTA, a/k/a "Manny"; and
STUART DUGAN, a/k/a "Stuey,"

                                          Defendants.
------------------------------------------------------------X

**TOWNES, United States District Judge:**

The government has filed a second superseding indictment in which defendants

Michael Angelo Souza, Michael Bolino, Shelton Willis, Emanuel Ruta, and Stuart Dugan

are charged.

The defendants filed a number of pretrial motions. Although the filing of

defendants' motions preceded the return of the superseding indictment, the substance of

those motions and the indictment remain unaffected by the supersedure. The Court held

oral argument on February 19, 2008.

Certain defendants seek to have the pretrial motions and other forms of relief filed

by the remaining defendants attributed to them as well. To ensure that all defendants

may raise every feasible motion on their respective behalf, such request is granted,

*provided that* the motions sought to be subsumed are not inconsistent with the issues

already posed by the requesting defendants.

## BACKGROUND

***The Indictment***

The introduction to the indictment describes and identifies the alleged enterprise, pursuant to 18 U.S.C. §1961(4), as the Colombo Crime Family. The Colombo family is described as a violent criminal enterprise which is part of La Cosa Nostra, the Mafia, or the Mob.

**Count One** charges the substantive count of racketeering against Souza and lists five predicate acts: the extortionate extension of credit conspiracy; marijuana distribution conspiracy; and extortionate collections of credit against three victims.

**Count Two** charges a racketeering conspiracy against Souza.

**Count Three** charges defendants Bolino, Willis, and Souza with conspiracy to commit assault in aid of racketeering against John Doe # 4.

**Count Four** accuses Souza of using, carrying, and possessing a firearm in connection with the conspiracy to commit assault in aid of racketeering.

**Count Five** charges Souza, Bolino, and Ruta with conspiring to make extortionate extensions of credit.

**Count Six** charges Bolino with illegal gambling, specifically sports betting in violation of New York state law.

**Count Seven** charges Souza with conspiring to distribute and to possess with intent to distribute marijuana.

**Count Eight** charges Willis and Dugan with conspiracy to commit robbery of an individual at a Staten Island home.

**Count Nine** charges Willis and Dugan with using, carrying, and possessing a firearm in connection with the Staten Island robbery.

**Count Ten** charges Bolino with bank robbery conspiracy.

**Count Eleven** charges Willis with robbery conspiracy.

**Count Twelve** charges Willis with using, carrying, and possessing a firearm in connection with the attempted robbery of an individual at a Connecticut residence.

**Count Thirteen** charges Souza, Bolino, and Ruta with conspiring to use extortionate means to collect extensions of credit from John Doe # 1.

**Count Fourteen** charges Souza, Bolino, and Ruta with using extortionate means to attempt to collect extensions of credit from John Doe # 1.

**Count Fifteen** charges Souza with using extortionate means to collect and attempt to collect extensions of credit from John Doe # 2.

**Count Sixteen** charges Souza with using extortionate means to collect and attempt to collect extensions of credit from John Doe # 3.

**Count Seventeen** charges Willis with conspiring to distribute 50 grams or more of a mixture or substance containing cocaine base.

I.     **DISCOVERY AND INSPECTION PURSUANT TO RULE 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

Defendants make numerous requests for discovery from the government of certain documents and other items. These motions are granted, in part, and denied, in part.

A.     The government is ordered to disclose any documents and tangible objects which belong to or were taken from defendants. Rule 16(a)(1)(E).

B.     The government is ordered to disclose defendants' prior convictions, if any. Rule 16(a)(1)(D).

C.     The government is ordered to disclose "any relevant written or recorded statements made by the defendants . . . within the possession, custody or control of the government."  Rule 16(a)(1)(B).

D.     Defendants' motion for pretrial disclosure of the substance of any hearsay statements the government intends to offer at trial is denied.  The Court will resolve any dispute concerning the admissibility of any co-conspirator statement at trial, consistent with well-established practice.

E.     Defendants' request that the Court order the government to disclose before trial any hearsay statements made by defendants' ostensible co-conspirators is denied.  *See In re U.S.*, 834 F.2d 283, 286-87 (2d Cir. 1987).

F.     Notice of intent to use Rule 404(b) evidence:  *See* paragraph VII, *infra*.

G.     Defendants move generally, pursuant to Rule 16(a)(1)(E)(i), for an order requiring the government to disclose documents and tangible objects material to the preparation of their defense.  The motion is denied.  Defendants have the burden to make a *prima facie* showing that the evidence sought is material.  *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991).  Defendants' claims that the unidentified items they seek are material is not sufficient to satisfy their burden.  *See United States v. Persico*, 447 F.Supp.2d 213, 217-18 (E.D.N.Y. 2006).

Motions for discovery of documents and objects that the government intends to offer as evidence in its case-in-chief are granted.  *See* Rule 16(a)(1)(E)(ii).

H.     Defendants' motions for discovery of written statements of all persons the government does not intend to call as witnesses at trial are denied.  A defendant is only entitled to disclosure of statements expressly authorized by Rule 16 or otherwise discoverable as exculpatory under *Brady*, or as impeaching under 18 U.S.C. § 3500.

A criminal defendant is not entitled to know everything that the government investigation has unearthed when such information is not used against him at trial. *United States v. Arroyo-Angulo*, 580 F.2d 1137 (2d Cir. 1978), *cert. denied*, 439 U.S. 913 (1978). The government is duty-bound to disclose to defendant exculpatory evidence if it exists. *See United States v. Ruggiero*, 472 F.2d 590 (2d Cir. 1973), *cert. denied*, 412 U.S. 939 (1973).

      I.      Defendants seek copies of "any and all written reports of any scientific analysis or chemical analysis conducted by the government" or its agents. Their motion is granted in that the government is ordered to provide to defendants copies of all reports of examinations and tests encompassed by Fed. R. Crim. P. 16(a)(1)(F) conducted by or at the direction of the government or its agent. Additionally, the government is directed to provide the object, item, or substance tested for independent expert analysis by defendants.

      J.      Motions for reports of handwriting or voice exemplars or tests, and fingerprint impression comparisons, which the government intends to offer in evidence or use at trial, are granted to the same extent as the motion is granted in paragraph I, above.

      K.      Defendants' request for grand jury testimony is granted to the extent that a defendant seeks a transcript of his own grand jury testimony. *See* Fed. R. Crim P. 16(a)(1)(A). In addition, defendants have the right to the grand jury testimony of any witness the government calls at trial after the witness has testified on direct examination. *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2(f)(3). On the basis of their applications, defendants are not otherwise entitled to inspect grand jury minutes.

**II.     MOTIONS TO DISMISS THE INDICTMENT; DEMAND FOR A BILL OF PARTICULARS**

### A.    *Motions to Dismiss the Indictment by Ruta and Souza are Denied*

Ruta moves to dismiss the three charges against him, or, in the alternative, for a bill of particulars.  The superseding indictment charges Ruta with one count of Extortionate Extension of Credit Conspiracy in violation of 18 U.S.C. §§ 892(a) and 3551 (Count 5); one count of Extortionate Collection of Credit Conspiracy in violation of 18 U.S.C. §§ 894 (a)(1) and 3551 (Count 13); and one count of Extortionate Collection of Credit in violation of 18 U.S.C. §§ 894 (a)(1), 2 and 3551 *et seq.*  The victim in Counts 13 and 14 is identified as John Doe # 1.

Count Five reads**:**

> In or about and between January 2004 and September 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants Souza, . . ., Bolino, . . ., Ruta, . . . together with others, knowingly and intentionally conspired to make extortionate extensions of credit.

Count Thirteen reads:

> In or about and between August 2006 and September 2006, . . ., within the Eastern District of New York and elsewhere, the defendants Souza . . ., Bolino, . . ., and Ruta, . . . together with others, did knowingly and intentionally conspire to use extortionate means to collect and attempt to collect extensions of credit from John Doe # 1, an individual whose identity is known to the grand jury.

Count Fourteen reads**:**

> In or about and between August 2006 and September 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants [Souza, Bolino and Ruta], together with others, knowingly and intentionally used extortionate means to attempt to collect extensions of credit from John Doe # 1, an individual whose identity is known to the grand jury.

Ruta principally argues that the loansharking charges "do not state facts sufficient to constitute an offense against the United States, do not state in plain, concise, and definite language the essential facts constituting the offenses charged, and do not inform the defendant of the nature of the accusation against him in such a manner as to enable him to prepare a defense." (Ruta Mot. at 11). Ruta principally relies on *United States v. Urso*, 369 F.Supp.2d 254 (E.D.N.Y 2005). There the district court dismissed two counts of an Indictment alleging loansharking violations. *Urso*, 369 F.Supp.2d at 266.

It is firmly established that "an indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). The Second Circuit "requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (*quoting United States v. Abrams*, 539 F. Supp. 378, 384 (S.D.N.Y. 1982)). A criminal defendant is entitled to an indictment that is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(C).

Ruta's motion to dismiss the charges against him fails. Here, unlike the indictment found to be deficient in *Urso*, the charges against Ruta name the victim, John Doe #1 and identify Ruta's co-conspirators in the charged crimes. Recently, the government identified John Doe # 1, a gentlemen whom the government states is "referenced in wiretap call 492, among other calls." At this point, all defendants know the identity of John Doe # 1. Moreover, the indictment adequately tracks the language of

the statutes charged and the indictment states the time and place, in approximate terms for the alleged crimes.

Additionally, it is noted that the defendant is accused of committing the crime of conspiracy in Counts 5 and 13.  "It is well settled that in an indictment for conspiracy to commit an offense – in which the conspiracy is the gist of the crime – it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy . . . ."  *Wong Tai v. United States*, 273 U.S. 77, 81 (1927); *see also United States v. Wydermyer*, 51 F.3d 319, 325 (2d Cir. 1995) (in charging conspiracy, an indictment "need only put the defendants on notice that they are being charged with a conspiracy to commit the underlying offense."); *Urso*, 369 F.Supp.2d at 267-68.  Here, both Counts 5 and 13 of the indictment are adequately pled because they identify each crime which the defendants are alleged to have conspired to commit.

Souza moves to dismiss Count Four of the indictment, which charges him with using, carrying, and possessing a firearm in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(B)(ii), and 3551, *et seq.*

Count Four charges that:

> On or about and between September 19, 2006 and December 12, 2006, both dates being approximate and inclusive, within the Eastern District of New York, Michael Angelo Souza, . . ., did knowingly and intentionally use and carry a firearm during and in relation to a crime of violence, to wit: the crime charged in Count Three, and did knowingly and intentionally possess such firearm in furtherance of such crime of violence.

Count Three charges Souza with Conspiracy to Assault in Aid of Racketeering.  The

government charges that Souza, Bolino, Willis, and others conspired to assault John

Doe # 4.

> Title 18 U.S.C. § 924(C)(1)(A)(i) provides:

>> . . . any person who, during and in relation to any crime of
>> violence or drug trafficking crime (including a crime of
>> violence or drug trafficking crime that provides for an
>> enhanced punishment if committed by the use of a deadly
>> or dangerous weapon or device) for which the person may
>> be prosecuted in a court of the United States, uses or carries
>> a firearm, or who, in furtherance of any such crime,
>> possesses a firearm, shall, in addition to the punishment
>> provided for such crime of violence . . . be sentenced to a
>> term of imprisonment of not less than 5 years.

18 U.S.C. § 924(C)(1)(A)(i).

> Title 18 U.S.C. § 924(C)(1)(B)(ii) provides:

>> If the firearm possessed by a person convicted of a
>> violation of this subsection ...is a machine gun or a
>> destructive device, or *is equipped with a firearm silencer or
>> firearm muffler*, the person shall be sentenced to a term of
>> imprisonment of not less than 30 years.

18 U.S.C. § 924(C)(1)(B)(ii) (emphasis supplied).

> At issue is the interpretation of *United States v. Bailey*, 516 U.S. 137 (1995).

Souza argues that, after *Bailey*, a conviction under Section 924(C) requires more than

mere possession of a firearm.  Instead, Souza urges, the defendant must have "actively

employed" the firearm in furtherance of the underlying crime charged.  (Souza Mot. at

30-31.)

> Souza's argument is based exclusively on the interpretation of Section 924(c) set

forth in *Bailey*.  The interpretation set forth in *Bailey*, however, was superseded by a

1998 amendment to Section 924(c), which extended that section specifically in response

to *Bailey*. " After the Supreme Court held [in Bailey ] that 'use' requires active employment rather than mere possession, Congress amended § 924(c) to include expressly a person who, 'in furtherance of any such crime, possesses a firearm.'" *United States v. Cox*, 324 F.3d 77, 84 n.2 (2d Cir.2003) (*citing, inter alia, Bailey*, 516 U.S. at 143, 116 S.Ct. 501; Criminal Use of Guns, Pub.L. No. 105-386, sec. 1, 112 Stat. 3469 (1998)). Because his argument is based exclusively on law predating that amendment, Souza's motion to dismiss the indictment is denied. *See United States v. Saltares*, 358 F.Supp.2d 297, 300 (S.D.N.Y. 2005).

### B.    Demands for a Bill of Particulars

Ruta seeks a bill of particulars and information as to:  (1) the date, time and place he allegedly joined the conspiracies as well as acts or statements indicating that he joined said conspiracy; (2) the exact acts and dates of acts attributable to defendant Ruta evidencing his role in the conspiracies; and (3) the exact acts and dates of acts Ruta allegedly committed in furtherance of the Loansharking Charges. (Ruta Mot. at 15.) Souza also requests a bill of particulars.

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a bill of particulars. Bills of particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. *United States v. Torres*, 901 F.2d 205 (2d Cir. 1990). The government is not obligated to "preview its case or expose its legal theory." *United States v. LaMorte*, 744 F.Supp 573 (S.D.N.Y. 1990). But there is a special concern for particularization in conspiracy cases. *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988).

Neither defendant explains how the discovery already provided by the Government is insufficient. For example, in listing their requests for information, neither defendant challenges the adequacy of the Government's productions. As we approach trial, the Government has made consistent Rule 16 disclosures. Unless defendants can attest to the inadequacy of the information supplied by the Government, the Court has no reason to order a bill of particulars nor can the Court determine what the Government should provide these defendants that it has not. *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)("a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means") (internal quotations omitted).

## III. EVIDENCE SUBMITTED TO THE GRAND JURY WAS SUFFICIENT TO SUPPORT THE CHARGES

Defendant Ruta argues that, upon information and belief, the evidence submitted to the grand jury was legally insufficient to support the three indicted Counts pending against hm. In support of his motion to dismiss Counts 5, 13, and 14 of the indictment, defendant summarizes the contents of five tape recordings which he argues can be construed as evidence of innocence. Defendant Ruta's motion to dismiss is denied.

A defendant who seeks to challenge a grand jury proceeding faces significant obstacles. A "presumption of regularity" applies to grand jury proceedings. *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974). "[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991). Defendant assumes that the tape recordings are the only evidence presented to the grand jury regarding defendant Ruta. There is simply no proof of this. The strong presumption of

-11-

regularity in grand jury proceedings "cannot be outweighed by purely conclusory or speculative allegations." *United States v. Ferrara*, 990 F.Supp. 146, 152 (E.D.N.Y. 1998). Further, even if the only evidence presented against defendant Ruta were those taped conversations, this Court would not analyze them to determine what to believe. That is the role of the jury. Counsel should save his arguments about what can be inferred from the relevant conversations for his closing argument at trial.

## IV.    DEFENDANTS' MOTIONS FOR SEPARATE TRIALS UNDER RULE 8(b) AND RULE 14(a) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The motion for separate trials by each defendant is denied.

Defendants Ruta and Souza move to sever their trials pursuant to Rule 8(b). Ruta argues that there is no connection between the acts alleged to have been committed by him and those of his co-defendants. (Ruta Mot. at 21-28). Of the five defendants proceeding to trial, Ruta is charged with Michael Angelo Souza and Michael Bolino in two separate conspiracy counts, as well as one count alleging extortionate collection of credit. Ruta stresses that the remaining counts involving the other defendants have absolutely no relation to the three counts under which he is charged. Souza also moves under Rule 8(b). He stresses that he is the sole remaining defendant charged with racketeering conspiracy and using, carrying, or possessing a firearm in relation to a crime of violence (Counts 1 and 3, respectively). Souza also notes that he is not charged with each co-defendant and concludes that this "lack of connection" requires severance under Rule 8(b).

### A.    Motions to Sever Pursuant to Rule 14(a)

#### 1.    Emanuel Ruta

According to Ruta, the risk of spillover prejudice is very high because he "may ultimately be convicted based upon evidence presented in reference to the other counts and other defendants." (Ruta Mot. at 24, 21-22.)  Ruta argues that because of the nature and sheer magnitude of the evidence to be presented at trial, it is anticipated that only a small portion of the evidence will pertain to him, and the jury will not be able to compartmentalize the evidence against him. (Ruta Mot. at 23.)  Ruta describes himself as an allegedly minor participant in one conspiracy who will be forced to sit through lengthy testimony of damaging evidence related to other, unrelated conspiracies.  Moreover, Ruta argues that he has never been arrested or convicted of any crime, and states that, although the government alleges that he and his co-defendants are members or associates of the Colombo crime family, he has no such association.

#### 2.    Michael Angelo Souza

Souza also moves under Rule 14(a), and in his brief and during oral argument, stressed that even though he "is charged as in essence the leader" of these defendants, he is not charged with any home invasions nor cocaine distribution rings.  Souza accuses the government of trying to "bootstrap" his marijuana-distribution count with the cocaine-base distribution count.

#### 3.    Shelton Willis

Willis argues that he will be prejudiced by the joinder of offenses and defendants because the indictment demonstrates "neither a consistency of individuals alleged to have violated the law or a common scheme or plan." (Willis Mot. at 7, Doc. 172.)

#### 4.    Stuart Dugan

Dugan moves under Fed. R. Crim. P. 14(a) for a separate trial "based on the existence of multiple conspiracies alleged in the indictment, as well as pervasive and unavoidable prejudice that will result by joinder of the defendants or counts."  (Dugan Letter Br.)  Dugan's "review of discovery material provided by the government indicates that [he] was not captured on any audio recordings provided to date; nor was he present during the course of the commission of any criminal conduct."  Due to his limited involvement, Dugan seeks severance.

Pursuant to Fed. R. Crim. P. 8(b), which addresses joinder of defendants,

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

There is a preference in the federal system for the joint trial of defendants indicted together, making severance inappropriate unless a joint trial would compromise a trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence.  *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995).  *See United States v. Turoff*, 853 F.2d 1037, 1042-43 (2d Cir. 1988) (explaining the confines of Rules 8(a) and 8(b)); *United States v. Ramos*, 346 F. Supp. 2d 567, 569 (S.D.N.Y. 2004) ("[c]o-conspirators should be tried together whenever feasible.") (internal quotation marks and citation omitted).  The Rule 8(b) requirement that joined defendants "have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses" should be "read . . . to mean that the acts must be 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'"  *United States v. Attanasio*, 870 F.2d 809, 815 (2d

-14-

Cir.1989); *United States v. Teitler*, 802 F.2d 606 (2d Cir.1986) (every defendant need not be charged in every count or participate in every transaction).

The defendants' arguments for severance fail regardless of whether the motion is brought under Rule 8(b) or 14(a) of the Federal Rules of Criminal Procedure. First, the defendants are properly joined pursuant to Rule 8(b). In accordance with that Rule's mandate, the defendants are charged in one or more counts together or separately. Moreover, each count charged is alleged to be part of a series of acts or transactions connected to the defendants' collective participation in crimes benefiting not only themselves, but the Colombo Crime Family as well. All defendants except Dugan are alleged to be members or associates of the Colombo Crime Family. Souza, Bolino and Willis are charged together with conspiracy to commit assault in aid of racketeering. Souza, Bolino, and Ruta are charged together in three loansharking counts. Dugan is charged with Willis in connection with two home invasions where both defendants allegedly possessed firearms.

Rule 14(a) of the Federal Rule of Criminal Procedure allows a district court to sever joint trials "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." Where the defendants are accused of participation in a common scheme, the preference for joint trials in the federal system is especially strong, and "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). "A motion for severance is committed to the sound discretion of the district court," *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir.1993), and "in order to prevail, the defendant must

show not simply some prejudice but substantial prejudice." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (internal citations omitted); *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) ("Given the balance struck by Rule 8 [permitting the joinder of defendants when the offenses are part of a common scheme], which authorizes some prejudice against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice.") (internal quotations omitted); *United States v. Carson*, 702 F.2d 351, 366-67 (2d Cir. 1983) ("[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials."). Moreover, much potential prejudice can be remedied through the use of limiting jury instructions, instructing the jury to consider each defendant individually. *See United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003).

As is often the case, defendants make conclusory statements with respect to jury confusion and spillover prejudice. The Indictment charges 17 counts which is not representative of an onerous or lengthy indictment. Ruta is charged in three counts, and Dugan is charged in two counts. For both Ruta and Dugan, the crimes charged involve minimal and straightforward facts as alleged by the indictment. Thus, the charges against Ruta and Dugan are not complicated, and the jury should not be confused if it hears testimony as to other criminal activity. There is no reason to believe that the jury will not be able to compartmentalize the evidence before it. The same holds true for Souza and Willis. Indeed, the government has informed the Court that it will need only eight days to present its case. Although the charges overlap, they do not overlap to an extent that would cause a jury to convict one defendant on the evidence offered against his co-defendant. *United States v. Garcia*, 848 F.2d 1324, 1334 (2d Cir. 1988) ("the

relatively small number of defendants, the straightforward nature of the proof, the similarity of the charged offenses, and the short trial all support the trial court's determination that the jury was able fairly to weigh the evidence against each defendant."), *rev'd on other grounds*, 490 U.S. 858 (1989); *United States v. Teitler*, 802 F.2d 606, 617 (2d Cir.1986) (strong presumption that juries can and will follow instructions to consider certain evidence separately).

## V.     MOTION TO SUPPRESS EVIDENCE SEIZED THROUGH WIRETAP

Defendants' motions are denied.

Souza moves this Court, pursuant to 18 U.S.C. § 2518(10)(a), and the Fourth Amendment to the United States Constitution, to suppress all evidence from the eavesdropping and/or electronic surveillance conducted of cellular telephone number (718) 872-8488 subscribed to the name of Maria Simone, but which the government has alleged is owned and used by Michael Souza.

There are two consecutive Orders issued in this matter, dated July 31, 2006, and August 31, 2006, and the relevant periods of electronic monitoring are from August 1, 2006[1] through September 26, 2006.

Souza argues that there were material misrepresentations in the government's July 31, 2006, application for an eavesdropping warrant.  He points only to the July 31, 2006, application and takes issue with the government's reliance on the cooperating witness's assertions to the affiant that Souza was a soldier in the Colombo crime family and is a cocaine supplier and conspiratorial leader of a burglary ring.  Defense counsel points out that, in this prosecution, Souza has not been charged with either narcotics

---

[1] During oral argument, Souza asked the Court to consider these arguments against the August 31, 2006, affidavit as well.

distribution or engaging in a burglary ring.  (Souza Mot. at 37.)  Souza charges that the cooperating witness "made knowingly false statements in reckless disregard for the truth."  (*Id.*)

Ruta maintains that the affidavit supporting the wiretap application was insufficient on its face because it "failed to allege facts sufficient to establish probable cause for believing the defendant was committing, had committed, or was about to commit any offense, that any communications concerning any offense could be obtained by means of the wiretap, or that the subject telephone was being or was about to be used in connection with the commission of any offense."  (Ruta Mot. at 28.)

Wiretap warrants are governed by 18 U.S.C. § 2510 *et seq*., which requires that before ordering the interception of wire communications, a judge must determine, based on the facts presented in an affidavit, that:  (1) there is probable cause to believe that an individual is committing, has committed, or is about to commit, a crime; (2) there is probable cause that communications about the crime will be obtained through the wiretap; (3) alternative means have failed or are too dangerous or unlikely to succeed; and (4) there is probable cause to believe that the premises to be wiretapped are being used for criminal purposes or are used or owned by the target of the wiretap.  *See* 18 U.S.C. § 2518(3).

Pursuant to 18 U.S.C. § 2518(1) and (3), an application or a renewal application permitting the government to intercept wire or oral communication requires: (a) the identity of the law enforcement officers making the application; (b) a statement of facts relied upon by the applicant; (c) a statement about whether other investigative procedures have been tried and failed, or are too dangerous; (d) a statement of the period of time for which the interception is required to be maintained; or of facts establishing probable

cause to believe additional communications of the same type will occur thereafter; (e) a full and complete statement of facts concerning all previous applications involving the same persons, facilities and places; and (f) where the application is for renewal or extension of an order, a statement setting forth the results or a reasonable explanation for the failure to obtain such results.

The arguments of both Souza and Ruta with respect to the affidavits are meritless. Probable cause is established if the "totality of the circumstances" contained in the affidavit indicates a probability of criminal activity and that evidence of the criminal activity could be obtained through the use of electronic surveillance. *Prima facie* proof is not required; instead, a probability of criminal activity needs to be established by the affidavit. *United States v. Ruggiero*, 824 F.Supp. 379, 398 (S.D.N.Y. 1993), *aff'd*, 44 F.3d 1102 (2d Cir. 1995). Here, the affidavit establishes probable cause that Souza's phone was being used for criminal activity as it provides: (1) statements from a reliable cooperating witness and other intelligence information indicating that Souza engaged in narcotics trafficking and was a member of the Colombo crime family; (2) consensual recordings in which Souza partakes in a coded discussion with the cooperating witness addressing the issue of whether a named individual is a narcotics source; and (3) toll information indicating that Souza was making a high volume of calls to known narcotics traffickers. (Gov't Opp. at Ex. B (July 31, 2006, Affidavit), at ¶¶ 6, 7-8, 10, 17.)

Moreover, the Court is satisfied with the cooperating witness's reliability as established by the affidavit. That affidavit provides corroboration of the witness's information through citation to: (1) police reports; (2) federal agents stating that they had been investigating the individuals named in the wiretap application in connection with narcotics trafficking; (3) prior use of the witness to obtain another wiretap 20 days earlier

in the Eastern District of New York; and (4) consensual recordings of Souza by the cooperating witness.  (Gov't Opp. at Ex. B (July 31, 2006, Affidavit), at ¶¶ 6, 16, 19-21, 23-24.)

The August 31, 2006, Affidavit seeking reauthorization to intercept wire communications demonstrated probable cause to believe that Souza, as well as other defendants, were committing (1) conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841, 843 and 846, and aiding and abetting those offenses, in violation of 18 U.S.C. § 2; (2) extortionate extension of credit, in violation of 18 U.S.C. § 892; and (3) racketeering and racketeering conspiracy, in violation of 18 U.S.C. §§ 1962, and 1963.  The Special Agent's affidavit: (1) established the affiant's personal participation in the investigation; (2) indicated that the statements in the affidavit were based on information provided by Special Agents of the DEA, other law enforcement personnel, confidential informants, and cooperating witnesses; (3) incorporated by reference the July 31, 2006, affidavit, specifically the information provided by the reliable cooperating witness; and (4) indicated that the first 30 days of intercepts on the subject telephone had provided information confirming Souza's involvement in organized crime (Affidavit in Support of First Renewal Application).  The August 31, 2006, affidavit also provided excerpts from intercepted phone calls where Souza and others discuss criminal activity and their association with organized crime.

Souza's main argument with respect to the July 31, 2006, affidavit is that, while the informant stated that Souza was involved in supplying cocaine and in a burglary ring, Souza was not charged with these crimes evidencing the unreliability of the informant and, it follows, the insufficiency of the affidavit.  Although Souza is not charged with

distributing cocaine, he is charged with conspiring to distribute marijuana.  As the government points out, it could not charge Souza with a burglary crime or organizing a burglary ring in federal court.  This Court is satisfied that the affidavit complied with the mandates of 18 U.S.C. § 2518 and established the likelihood of criminal activity, specifically activity related to illegal narcotics.

Moreover, defendants have not established that a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), is required.  Pursuant to *Franks*, an affidavit in support of a wiretap application may be challenged, and evidence suppressed, if the defendant can make a substantial preliminary showing that the affiant either deliberately, or with reckless disregard, submitted an affidavit omitting material facts.  *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991).  Souza points to no material fact that the government omitted.

### A.    Minimization

Souza also argues that the government failed to properly minimize.  (Souza Mot. at 39-40.)  He lists ten phone calls to demonstrate that "the agents monitored a substantial number of mundane, personal conversations wholly irrelevant to the investigation." (Souza Mot. at 41).  Souza only lists these ten because of the "high volume of discovery and a large number of instances" wherein the agents failed to minimize.  (*Id.*)

Title III requires that eavesdropping "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." 18 U.S.C. § 2518(5).  The statute does not prohibit the interception of any non-pertinent conversations and instead simply requires law enforcement officers to make reasonable efforts to minimize such interceptions.  *See Scott v. United States*, 436 U.S. 128, 140 (1978); *United States v. McGuinness*, 764 F.Supp. 888, 900 (S.D.N.Y. 1991).  Once the government makes a *prima facie* showing of compliance with Title III, the burden shifts to the defendant to demonstrate that "a substantial number of non-pertinent conversations have been intercepted unreasonably."  *United States v. Menendez*, No. 04-cr-219 (DAB), 2005 WL 1384027, at *3 (S.D.N.Y. June 8, 2005) (citing cases).

Souza provides line sheets for ten phone calls demonstrating that the government monitored social conversations about marital relations, conversations with employees, a conversation with Souza's bankruptcy lawyer, with a prospective business partner, and an employee of a fitness gymnasium.  (Souza Mot. at 42.)  Subtracting from the effectiveness of Souza's arguments is the fact that most of the phone calls lasted for less than three or even, two minutes.  To be exact, three calls lasted for less than two minutes.

-22-

Two calls lasted for slightly more than two minutes.  Four calls lasted for exactly three minutes or slightly more.  One call lasted for just over six minutes.

In opposition to defendant's motion, the government initially responded:  "Here, the DEA undertook reasonable efforts to comply with its minimization obligations.  Indeed, the agents minimized approximately 171 calls during the period of interception.  That is despite the fact that Souza used his phone extensively to discuss criminal activity . . . ." (Gov't. Br. at 35).  The government then disputes Souza's reliance on the ten phone calls listed in his brief.

Certain measures taken by the government are helpful in establishing compliance with the minimization requirement.  "These measures include: (1) maintenance of monitoring logs, (2) judicial supervision of the surveillance process through, *e.g.*, the provision of periodic reports, (3) the provision of written and oral instructions to monitoring personnel concerning the legal requirements for minimization and log-keeping, and (4) supervision by the prosecutor."  *United States v. Melendez*, No. 04-cr- 219 (DAB),  2005 WL 1384027, *3 (S.D.N.Y. June 8, 2005); *see also United States v. Columbo*, No. 04-cr-273 2006 WL 2012511, *12 (S.D.N.Y. July 18, 2006) (describing same compliance).

During oral argument, the Court informed the government that its representations as to measures taken to comply with the minimization requirement were inadequate.  The government must demonstrate a good faith effort to comply, or the Court will have to conduct a hearing.  Following oral argument, the government filed a letter addressing the Court's concerns.  The government informs that:  (1) the July 31, 2006, application in support of the wiretap authorization and the affidavit submitted by the agent on that same day both specifically address minimization; (2) the government provided periodic reports

to the district court judge overseeing the interceptions, and the reports occurred

approximately every ten days during the entire period of interception; (3) both during and

before the interception period, prosecutors frequently discussed minimization with the

monitoring agents; and (4) intercepting agents were given a written memorandum

regarding minimization.  (Gov't. Feb. 19, 2008, Letter.)  The Court is satisfied that the

government established compliance with the minimization requirement.  Defendants have

not responded to the government's letter.

**VI.     MOTION FOR A HEARING TO DETERMINE THE INTELLIGIBILITY
          OF TAPES AND THE ACCURACY OF TIME SHEETS**

Ruta requests a hearing pursuant to the Fifth and Sixth Amendments to the

Constitution and Fed. R. Crim. Proc. 104(c) to determine the audibility of any tape

recording the government intends to offer against him at trial.

This motion is denied as premature, as the government  has not indicated which

tapes it will introduce at trial.  However, it is more likely than not that the government

will play tapes containing conversations with Ruta.  If, after listening to recordings the

government intends to introduce at trial, counsel believes an audibility hearing is

warranted, he may make an application to the Court.  The Court notes, however, that

counsel for defendant has summarized the contents of recordings in defendant's motion

to dismiss the indictment.

**VII.    MOTION FOR THE GOVERNMENT TO GIVE NOTICE OF ITS
          INTENTION TO USE EVIDENCE OF OTHER CRIMES, WRONGS, OR
          BAD ACTS UNDER FEDERAL RULE OF EVIDENCE 404(b)**

Defendants seek notice of the government's intention to use evidence of prior

crimes, wrongs, or bad acts.  Souza states that he intends to testify at his trial.  (Souza Br.

at 46.)  The government is directed to provide sufficient notice pursuant to Rule 404(b),

which requires reasonable notice in advance of trial of the general nature of such evidence.

## VIII.   MOTION FOR HEARING REGARDING GOVERNMENT'S ALLEGATIONS OF CODED CONVERSATIONS

Ruta requests that, insofar as the government seeks to introduce into evidence conversations allegedly conducted in "code," the Court issue an order requiring the government to demonstrate the factual basis for its determination that the conversations were in code and the meanings it ascribes to the various words and phrases alleged to be in code and "the qualifications of the expert(s) whom it intends to offer to testify as to the meaning of the codes.  (Ruta Mot. at 31.)  Additionally, Souza seeks identification of any expert the government will call to explain coded language.

Ruta also requests a pretrial hearing with respect to the government's prospective testimony regarding "coded" conversations sought to be admitted at trial.  (Ruta Mot. at 32.)  The government responds that the "specifics regarding the content of Mr. Carillo's testimony and his pedigree can be found in his 18 U.S.C. § 3500 material, which is forthcoming, including his 2007 testimony in *United States v. Persico, et al.*, No. 04-cr-911, 2007 U.S. Dist LEXIS 30172, at *1 (E.D.N.Y. Mar. 23, 2007).  There is no issue disclosed upon which this Court would order a hearing.

Since the filing of these motions, the government has disclosed the identity of its Organized Crime Expert, John Carillo.  The government  also indicates that it will produce an expert from the Drug Enforcement Administration to address narcotics code language.  (Gov't. Opposition at 38.)

The Second Circuit has drawn a line between expert testimony on the roles and conduct of organized crime members and expert conclusions that the defendant's conduct

is consistent with those roles and that conduct. *See, e.g., Tutino*, 883 F.2d at 1134 (upholding expert testimony on narcotics and organized crime because it was general and did not draw conclusions or interpretations about the evidence against the defendants); *Daly*, 842 F.2d at 1388 (upholding expert testimony in part because expert did not draw conclusions about defendants' conduct); *United States v. Gambino*, 818 F.Supp. 536, 538 (E.D.N.Y.1993) (cautioning the government to limit expert testimony to general explanations and allow the fact witnesses to testify to the facts necessary to prove the indictment's allegations). The Court is satisfied with the government 's assurances that, if qualified, its expert will limit his testimony to the roles and conduct of organized crime generally.

## IX.   MOTION TO COMPEL THE GOVERNMENT TO DISCLOSE THE IDENTITY OF INFORMANTS, THEIR DATES OF BIRTH, CRIMINAL RECORDS, AND ALL RELATED MATERIAL PURSUANT TO *ROVIARO v. UNITED STATES*

Movants seek discovery of the identity and testimony of co-conspirators and of confidential informant(s). This motion is denied.

The government is not required to furnish the identities of informants unless it is essential to the defense. *Roviaro v. United States*, 353 U.S. 53, 60-61, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957); *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir.) *cert. denied*, 489 U.S. 1089, 109 S. Ct. 1555, 103 L. Ed. 2d 858 (1988). Rule 16 does not require the government to disclose the names of witnesses prior to trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d. Cir.) *cert. denied*, 498 U.S. 921, 111 S. Ct. 299, 112 L. Ed. 2d 252 (1990).

The defendants have not established that the pre-trial disclosure of the identities of any informants is essential to their defense. However, should the government call

informants to testify, the government must provide Jencks Act materials and impeachment disclosures for them as required.

Regarding Souza's motion to compel disclosure of the identity of the government's cooperating witness, the government correctly points out that Souza has known the identity of the cooperating witness for some time, as Souza employed a private investigator to locate the cooperating witness. Souza conceded his knowledge of such during oral argument.

## X.    MOTION FOR AN ORDER PERMITTING THE DEFENSE TO INTERVIEW INFORMANTS

Movants seek to interview government informants prior to trial. The government has agreed to contact the attorney for any informant to inform him or her of the defendants' request. If the informant agrees to be interviewed, the government and defendants are to schedule a mutually-convenient time and place for such to occur.

## XI.    MOTION TO REQUIRE FULL DISCLOSURE OF ANY AND ALL *GIGLIO* MATERIAL

Movants seek an order requiring the government to disclose material information relating to the credibility of the government's witnesses. The government responds that it has complied – and will continue to comply – with its obligations under *Giglio*. The Court accepts those representations.

## XII.    MOTION TO DISCOVER EXCULPATORY EVIDENCE PURSUANT TO *BRADY v. MARYLAND*

The government responds to defendants' motions that it has complied – and will continue to comply – with its obligations to disclose all *Brady* material as to each defendant. The Court accepts those assurances, and defendants' motion for a discovery order is denied. *See United States v. Perez*, 940 F.Supp. 540, 543 (S.D.N.Y. 1996)

("Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to *Brady* where the government . . . has made a good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure under *Brady*.").

## XIII.   MOTION FOR EARLY DISCLOSURE OF JENCKS ACT MATERIAL

The Jencks Act governs the disclosure of information and statements relating to the government 's witnesses.  The Jencks Act, in pertinent part, provides as follows:

> (a)   In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a government  witness or prospective government  witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
>
> (b)   After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to subject matter as to which the witness has testified.

18 U.S.C. § 3500(a)-(b).  The government  states that it will disclose Jencks material for certain of its witnesses in advance of trial but will not provide Jencks material until the day of their testimony for certain witnesses given the government's concerns for those witnesses' safety and the risk of witness tampering.

This Court is without authority to order the government to disclose Jencks material prior to trial.  Defendants' motions are denied.

**XIV.  DEFENDANTS' MOTION FOR AGENTS TO RETAIN THEIR ROUGH NOTES**

In its memorandum of law opposing the defendants' pretrial motion, the government states that it has advised agents to refrain from discarding any notes they have taken.  The Court is satisfied with the government's assurances.

**XV.  DEFENDANTS' MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO IDENTIFY THE EXHIBITS IT WILL INTRODUCE AT TRIAL**

The government agrees to identify its exhibits as requested by defendants.

**XVI.  MOTIONS TO SUPPRESS EVIDENCE RECOVERED DURING THE EXECUTION OF SEARCH WARRANTS**

The motions to suppress are denied.

On December 11, 2006, Special Agent Edward Tracy of the Drug Enforcement Administration submitted his affidavit to Magistrate Judge Steven M. Gold seeking (1) a warrant to search the residence of defendant Willis at 53 Hickory Road, basement apartment, in Staten Island, New York, and (2) a warrant to search a 2007 black Chevrolet Tahoe used by Souza.  (Gov't. Opp. at Ex. A (Tracy Affidavit).)  Magistrate Judge Gold issued both warrants.

In his affidavit, Special Agent Tracy states that there was probable cause to believe that agents would find a police scanner, walkie talkies, and a handgun constituting evidence concerning and property used in committing robbery conspiracy.  The Tracy Affidavit states that his knowledge of the matters detailed in the affidavit was based upon his personal investigation of the case, including review of documents, interviews of witnesses, wiretap intercepts, consensual recordings by a cooperating witness and discussions with other law enforcement personnel involved in the investigation.  (Gov't. Opp. at Ex. A (Tracy Affidavit), ¶ 1).)  The Tracy Affidavit

-29-

provides that a cooperating witness whom the DEA considered reliable and whose

information is corroborated by numerous consensual recordings made by the cooperating

witness, wiretap intercepts, and surveillance by the DEA, had identified the Hickory

Road premises as Willis' residence.  (Gov't. Opp. at Ex. A (Tracy Affidavit), ¶ 3).)

During "consensual recordings" of Willis by the cooperating witness "over the past

several months," Willis admitted to home invasions in Staten Island and Connecticut.

These consensual recordings also established that Willis admitted to engaging in a home

invasion in Staten Island during which he possessed a firearm and used a police scanner

to evade law enforcement.  (Gov't. Opp. at Ex. A (Tracy Affidavit), ¶ 7).)  On

December 6, 2008, the cooperating witness met with Willis at the Hickory Road Premises

and Willis asked the cooperating witness if he was interested in participating in two home

invasions that Willis planned to commit in the near future.  (Gov't. Opp. at Ex. A (Tracy

Affidavit), ¶ 8).)

    ***A.    Willis' Motion to Suppress Evidence Recovered as a Result of a Search
        Pursuant to a Warrant Issued to Search His Residence***

Willis argues that the affidavit supporting the warrant includes "false statements,

material misstatements and omissions" and that the affidavit did not support a finding of

probable cause.  As such, the basement apartment should not have been searched because

the affidavit does not state with specificity the basis for the reliability of the informant

nor for how long the individual had been an informant.  (Willis Mot. at 4-7).  During oral

argument, Willis's attorney argued that it is "an amorphous standard as to what

constitutes reliability"  (Tr. at 24) in order to demonstrate that the affidavit failed to

adequately establish the informant's reliability.

Willis takes issue with the affiant's statement at paragraph 7, which states that "[d]uring consensual recordings of Willis by CW [cooperating witness] over the past several months, Willis admitted to engaging in" two home invasions, that he possessed a firearm during the robbery, and that he and others used a police scanner to evade law enforcement. Willis argues that the use of the phrase, "over the past several months" gives the impression that numerous recordings had been made over a significant period of time as opposed to only three recordings which were actually supplied. (Willis Mot. at 5.) Willis also takes issue with paragraph 8, wherein Tracy states that the cooperating witness met with Willis on December 6, 2006, at the Hickory Road Premises and that Willis asked the cooperating witness if he was interested in participating in two home invasions Willis planned to commit in the near future. (Gov't. Opp. at Ex. A (Tracy Affidavit), ¶ 8).) Willis states that if this conversation was recorded, it had not been included in discovery. (Willis Mot. at 5). Paragraph 8, therefore, creates the "impression . . . that Willis made an independently verifiable admission that future criminal activity was to take place and that he had the means to accomplish it." (*Id.*).

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. It has become well-established that "[t]o establish probable cause to search a residence, two factual showings are necessary – first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). The initial determination of probable cause falls to a neutral magistrate judge, who must "first satisfy himself as to the adequacy and reliability of the facts set forth in the application before him. It is from

these facts and any reasonable inferences to be derived from them that he determines whether probable cause to issue a warrant is or is not present." *Id.* (internal quotation marks and citations omitted). "While probable cause requires more than a mere suspicion, of wrongdoing, its focus is on probabilities, not hard certainties." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (internal quotation marks and citations omitted). Thus, a magistrate judge determining whether probable cause exists to issue a search warrant must consider whether "there [is] a fair probability that the premises will yield the objects specified in the search warrant." *Travisano*, 724 F.2d at 346 (citing *Illinois v. Gates*, 462 U.S. 213, 245-46 (1983)).

Here, because the issuance of the subject search warrant is challenged, this Court is required to review Magistrate Judge Gold's finding of probable cause. Given the "substantial deference" accorded Magistrate Judge Gold's finding, *see Travisano*, 724 F.2d at 345, and this Court's independent review of the search warrant and supporting affidavit, it is clear that the requisite probable cause existed. First, the government correctly notes that Willis offers no legal authority indicating that reliability can only be demonstrated by establishing "how long" the person was an informant, "whether the individual has been charged with a crime," whether the informant is "a co-conspirator" and whether the informant is "receiving compensation or any payment to cover living expenses." (Willis Mot. at 4.) Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of providing reliable information, or if it is corroborated in material respects by independent evidence. *United States v. Wagner*, 989 F.2d 69, 72-73 (2d Cir.1993). The Tracy Affidavit in support of the challenged search warrant states that information obtained by a cooperating witness whom the DEA considered reliable was corroborated by numerous

consensual recordings made by the cooperating witness in addition to wiretap intercepts and surveillance by the DEA.  (Tracy Affidavit, ¶ 3.)

Next, Willis argues that the Tracy affidavit is misleading because it states that "[d]uring consensual recordings of Willis by CW [cooperating witness] over the past several months," Willis admitted to engaging in two home invasions, possessing a firearm during the robbery, and using a police scanner to evade law enforcement.  Willis argues that the use of the phrase, "over the past several months" gives the impression that numerous recordings had been made over a significant period of time as opposed to only three recordings which were actually supplied.  The Court fails to see how this is misleading.  Even if the statement "over the past several months" gives the impression that numerous recordings had been made, it is of no consequence that only three were made.  So long as the statement is accurate, as it is here, there is no logical reason to find it misleading.  The fact is, Willis admitted to committing two home invasions on tape and this information is set forth in the affidavit.  Finally, Willis argues that it is misleading that the meeting between the cooperating witness and Willis, detailed at paragraph 8 of the Tracy Affidavit, was not recorded even though the affidavit conveys that it may have been recorded.  (Willis Mot. at 5.)  Review of the paragraph reveals that there is no allegation that a consensual recording of the meeting was made.  Reading the affidavit as a whole, there is no reason to believe that this meeting was subject to a consensual recording in light of the fact that other parts of the Tracy Affidavit clearly stated when a meeting or conversation was subject to an actual, consensual recording.

"To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that:  (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and

(2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable

cause finding."  *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000) (internal

quotations omitted).  However, since "[e]very statement in a warrant affidavit does not

have to be true," *id.* at 718 (internal quotation marks and citations omitted), a person

seeking to obtain a *Franks* hearing must make a "substantial preliminary showing" of the

alleged inaccuracies or omissions.  *Franks*, 438 U.S. at 155-56; *U.S. v. Millar*, 79 F.3d

338, 342-43 (2d Cir. 1996).  To satisfy this degree of proof, the challenger "should point

out specifically the portion of the warrant affidavit that is claimed to be false; and this

should be accompanied by a statement of supporting reasons.  Affidavits or sworn

[statements] or otherwise reliable statements of witnesses should be furnished, or their

absence satisfactorily explained."  *Franks*, 438 U.S. at 171.

In the instant case, defendant has failed to sufficiently establish that a *Franks*

hearing is necessary.  Willis has not identified any statements in the Tracy Affidavit as

being potentially inaccurate or misleading.  Thus, Willis' request for a *Franks* hearing

and suppression are denied.

### B.      *Souza's Motion to Suppress Evidence Recovered from His Automobile Pursuant to a Search Warrant*

Magistrate Judge Gold also permitted the Government to search a 2007 black

Chevrolet Tahoe used by Souza.  Souza seeks to suppress evidence obtained pursuant to

the search warrant because the use of a single search warrant affidavit to seek warrants

for multiple locations was prejudicial as "the probable cause for issuing a wholly separate

warrant was co-mingled with the probable cause against the Souza vehicle."

Souza's motion is denied.  Souza's arguments do not undermine the sufficiency of

the Tracy Affidavit and the legality of the search warrant. The Tracy Affidavit establishes

probable cause to search the vehicle and the statements establishing such cause are not commingled with the probable cause for the Hickory Premises.  The Tracy Affidavit states that (a) the cooperating witness reported that Souza used the subject vehicle; (b) DEA agents had surveillance indicating that Souza entered the vehicle several days before issuance of the challenged search warrant; (c) wiretap intercepts of Souza's phone in August 2006 and September 2006 corroborate the cooperating witness' information that Souza was involved in a dispute with Hector Pagan, a Bonanno crime family associate; (d) wiretap intercepts also established that Souza threatened Pagan; (e) Souza discussed murdering Pagan with the cooperating witness; (f) on December 7, 2006, the cooperating witness consensually recorded a conversation with Souza about the planned murder during which time Souza reiterated that he had a silencer to use on Pagan; and (g) to show the cooperating witness his homemade silencer, Souza "reached underneath the dashboard on the passenger side of the subject vehicle" to locate the illegal weapon. The Court is satisfied that probable cause existed to search the vehicle.

## XVII.  OTHER MOTIONS

The Court has considered other motions filed by defendants and determined that they are without merit, and they are hereby denied.

SO ORDERED.

Dated: Brooklyn, New York
          March 19, 2008

*Sandra L. Townes*

SANDRA L. TOWNES
United States District Judge